**AKERMAN LLP**
PRESTON K. ASCHERIN (SBN 260361)
Email: preston.ascherin@akerman.com
PARISA JASSIM (SBN 273915)
Email: parisa.jassim@akerman.com
601 West Fifth Street, Suite 300
Los Angeles, California 90017
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Attorneys for Defendant
NEWREZ dba SHELLPOINT MORTGAGE SERVICING

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET CAREAGA an individual, RODRICK CAREAGA, an individual<br><br>Plaintiffs,<br><br>v.<br><br>NEWREZ dba SHELLPOINT MORTGAGE SERVICING<br><br>Defendant. | Case No.: 2:21-cv-5314 FLA (PVCx)<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DEFENDANT NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING'S NOTICE OF AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Concurrently filed with Request for Judicial Notice and [Proposed] Order]*<br><br>**Hearing Information:**<br>**Date: December 3, 2021**<br>**Time: 1:30 p.m.**<br>**Ctrm: 6B**<br><br>Complaint Filed: June 30, 2021<br>FAC Filed: October 15, 2021<br>Trial: None Set |

/ / /

/ / /

/ / /

/ / /

/ / /

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** on December 3, 2021 at 1:30 p.m., or as soon thereafter as may be heard in Courtroom 6B of the First Street U.S. Courthouse, located at 350 West First Street, 6th Floor, Los Angeles, California 90012, defendant NewRez LLC dba Shellpoint Mortgage Servicing (**Shellpoint**) will move for an order dismissing plaintiffs Margaret Careaga and Rodrick Careaga's first amended complaint.

Access to the courthouse may be restricted in light of measures taken to curb the spread of the novel coronavirus COVID-19. Please obtain information directly from the court (*e.g.*, at https://cand.uscourts.gov/notices/information-regarding-covid-19/) regarding potential telephonic attendance at the hearing, if the matter is not to be decided on the papers.

Shellpoint moves pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds the Careagas' first amended complaint fails to state a claim upon which relief can be granted.

Shellpoint's motion bases on this notice, the attached memorandum of points and authorities, the concurrently filed request for judicial notice, the records and files of this Court, and such further evidence and argument as may be presented prior to or at the time of the hearing on the motion.

The parties met and conferred pursuant to L.R. 7.3.

Dated: October 29, 2021    **AKERMAN LLP**

By: */s/ Parisa Jassim*
   Parisa Jassim
   Preston K. Ascherin
Attorneys for Defendant
NEWREZ dba SHELLPOINT MORTGAGE SERVICE

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

At base, plaintiffs Rodrick and Margaret Careaga allege Shellpoint unreasonably delayed insurance disbursements to repair and remediate property damage caused by debris flow following the 2017 Thomas Fire. Shellpoint held insurance proceeds in an escrow account and later released them in a series of disbursements—squarely within its rights under the trust deed. Though the property is now habitable, the Careagas baselessly insist Shellpoint is liable for restoring it to its pre-debris flow condition.

The trust deed gives Shellpoint broad discretion as to when and how it disburses insurance proceeds. These provisions—intended to protect Shellpoint's security interest—do not give rise to common law duties, nor do they support breach allegations. Misunderstanding them, the Careagas wrongly claim Shellpoint breached a purported duty of care and fiduciary duty by delaying disbursements. Their elder abuse allegations fare no better because Shellpoint did not deprive the Careagas of owed benefits. No matter how favorably the Court construes the Careagas' claims, there is no basis for relief as to Shellpoint, warranting dismissal with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Deed of Trust Governs Insurance and Disbursements.

In March 2006, the Careagas obtained a $1,499,000 loan from America's Wholesale Lender, secured by a trust deed recorded against property located at 160 Santo Tomas Lane, Santa Barbara, California 93108. (Request for Judicial Notice (**RJN**), Ex. 1.) Shellpoint services the loan. (FAC, ¶¶ 2, 15.)

Under Section 5 of the trust deed, the Careagas agree to insure the property "against loss by fire . . . and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance." (RJN, Ex. 1, ¶ 5.) If the Careagas fail to maintain insurance, "Lender may obtain insurance coverage, at Lender's option and [the Careagas'] expense." (*Id.*; FAC, ¶ 15.) The Careagas' insurer cancelled their policy, effective April 17, 2017. (FAC, ¶ 14.) Pursuant to the trust deed's provisions,

Shellpoint obtained insurance from National Fire & Marine Insurance Company (**National**). (FAC, ¶¶ 15-16.)

Regardless of whether lender or the Careagas obtain the policy, the policy "shall name Lender as mortgagee and/or as an additional loss payee and [the Careagas] further agree[] to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance." (RJN, Ex. 1, ¶ 5.) To protect its security interest, lender has broad discretion under Section 5 as to when and how it disburses insurance proceeds:

> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender . . . Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security interest is not lessened. During such repair and restoration period, Lender **shall have the right** to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. **Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.**

(*Id.*) (Emphasis added.)

Section 7 of the trust deed contains similar provisions and imposes a duty on the Careagas, not lender, to maintain and repair the secured property:

> Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance . . . proceeds are paid in connection with damage to . . . the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. **Lender may disburse proceeds for the repairs or restoration in a single payment or in a series of progress payments as the work is completed.** If the insurance . . . proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

(RJN, Ex. 1, ¶ 7.) (Emphasis added.)

/ / /

/ / /

### B. Disbursement of Insurance Proceeds and Repairs.

In January 2018, the property sustained debris flow damages following the 2017 Thomas Fire. (FAC, ¶¶ 1, 4, 17-19, 37.) The Careagas were renting the property at the time, with a portion of rent allocated to monthly mortgage payments. (FAC, ¶ 17.) The Careagas defaulted after their tenants moved out of the property. (FAC, ¶¶ 19, 38-40.)

The property was inspected three times to determine repair and cleanup costs. (FAC, ¶¶ 21-22 27, 36.) RYZE Claim Solutions and Castro's Cleaning & Restoration estimated $29,563.08 and $49,000 for cleanup, respectively. (FAC, ¶¶ 22 and 27.) Grecco Construction, the alleged insurer's consultant, originally estimated $250,342.42 for remediation and repair, but later revised its estimate to $250,000. (FAC, ¶¶ 28, 36.)

Shellpoint received two checks to repair the property: a $29,563.08 check from Proctor Financial, third-party administrator for National and Shellpoint, in April 2018, followed with a $171,991.64 check from National in September 2018. (FAC, ¶¶ 23, 29.) Shellpoint notified the Careagas of the checks in November. (FAC, ¶ 30.) About two weeks later, Shellpoint agreed to release 25% of the $171,991.64 check for repairs. (FAC, ¶ 31.) Repairs began in April 2019, and the property was habitable by September. (FAC, ¶ 36.)

### C. The Careagas' Lawsuit.

The Careagas filed suit June 30, 2021. (*See* dkt. 1.) They filed their first amended complaint on October 15, 2021. (*See* FAC.) They allege the insurer refused to pay for all damages resulting from the debris flow, "claiming that the damages were not considered part of the original loss writing . . . [because m]ost of the additional repairs . . . were necessitated by the fact that (1) the subject property [was] unoccupied since January 2018; and (2) an inordinate and unreasonable amount of time passed before any repairs were ever undertaken." (FAC, ¶ 37.) (Internal quotations omitted.) The Careagas contend Shellpoint "lacked any sense of urgency or immediacy" to remediate

and repair the property and failed to exercise any "due diligence . . . to protect the dwelling from further damage." (FAC, ¶¶ 5, 37, 42.)

## III. LEGAL STANDARD

Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when a complaint exhibits a "(1) lack of a cognizable legal theory or (2) the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). The factual "allegations must be enough to raise a right to relief beyond a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Dismissal with prejudice is proper if "it is clear that the complaint could not be saved by amendment." *Livid Holdings, Ltd. v. Solomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). Under *Bell* and *Ashcroft*, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," so the defendant receives fair notice of the grounds and nature of the claims. *Twombly*, 550 U.S. at 570. The court will not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. When considering a motion under Rule 12(b)(6), the court must accept factual allegations in the complaint as true and draw reasonable inferences in plaintiff's favor. *Id*. at 664.

## IV. ARGUMENT

### A. Failure to State Negligence.

To state a negligence claim, a plaintiff must allege legal duty, breach of that duty, and resulting injury. *Jackson v. Ryder Truck Rental*, 16 Cal.App.4th 1830, 1837 (1993). The Careagas cannot establish a requisite legal duty, let alone breach or resulting injury.

The Careagas allege Shellpoint owed them a common law duty "to exercise reasonable care in the oversight and holding, in escrow, insurance proceeds that were to be applied to restoration or repair of the Property." (FAC, ¶ 57.) By receiving insurance proceeds, the Careagas claim Shellpoint's duty of care included "informing them of the receipt of those funds . . . and to release the insurance proceeds to allow remediation to occur on the Property so that it would not be further damaged." (*Id*.)

AKERMAN LLP
601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Yet their only apparent source of these purported duties stem from the trust deed. (*See* FAC, ¶¶ 57, 64 ("Under Paragraph 5 of the Deed of Trust, Shellpoint exercised considerable discretion in the oversight and maintenance of the escrow account holding insurance proceeds"); ¶ 77 ("Under the Note and Deed of Trust, insurance proceeds were to be used for remediation and repair of the property"); ¶ 78 ("Implied in the Note and Deed of Trust is Shellpoint's duty to exercise reasonable care in the oversight and holding, in escrow, insurance proceeds that were to be applied to restoration or repair of the Property").) Whether as a negligence claim or a veiled claim for breach of the trust deed, the Careagas' second cause of action suffers insurmountable deficiencies.

### 1. No Requisite Duty of Care.

The Careagas' negligence claim cannot lie as to duties admittedly arising out of the trust deed. "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal.4th 543, 551 (1999); *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 506 (1994) ("An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.").

"[A] financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1096 (1991). "[L]iability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Id.* The California Court of Appeals continues to reaffirm the long-standing principle articulated in *Nymark*. *See, e.g., Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109 (1996) (lender or loan servicer owes no duty or obligations to the borrower other than as expressly agreed in the promissory note and trust deed or imposed by foreclosure statutes); *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 67 (2013).

/ / /

The Careagas do not allege any conduct by Shellpoint falling outside the trust deed or its conventional servicer role. In *Goyal v. Capital One, N.A.*, No. C-12-02759 RMW, 2012 WL 3878114, at *2 (N.D. Cal. Sept. 6, 2012), the court considered and rejected the notion a servicer owed a duty of care arising from the maintenance of an escrow account or payment of property taxes and insurance, holding these functions "[do] not exceed [the] conventional role [of] a loan servicer." *Id*. The same is true here: the trust deed—the document governing Shellpoint's servicing role and function—specifically contemplated and delineated the terms for disbursements of insurance proceeds. (RJN, Ex. 1, ¶ 5.) The Carreagas' allegations merely reflect Shellpoint exercised its option under Section 5 to hold insurance proceeds in an escrow account and disburse those proceeds "in a series of progress payments as the work is completed." (FAC, ¶¶ 23, 29, 31; RJN, Ex. 1, ¶ 5.) Nothing in Section 5, or elsewhere in the trust deed, provides Shellpoint must notify the Careagas when it receives insurance proceeds. This conduct cannot give rise to a negligence claim. *See, e.g., Noel v. Combs*, No. 37201100093802CUFRCT, 2013 WL 12138156, at *3 (Cal.Super. Oct. 04, 2013) (lender was acting within its conventional lender role when it disbursed insurance proceeds pursuant to Section 5 of the deed of trust); *Goyal,* 2012 WL 3878114, at *2.

**2.** <u>No Breach</u>.

Notwithstanding their failure to establish a requisite duty of care, the Careagas plead no facts to demonstrate breach. The only purported duties alleged in the complaint base on Section 5 of the trust deed, which the Careagas admit governed Shellpoint's disbursements of insurance proceeds. (FAC, ¶ 57.) Under that section, Shellpoint "shall have the right to hold such insurance proceeds until [Shellpoint] has had an opportunity to inspect such Property to ensure the work has been completed to [Shellpoint's] satisfaction." (RJN, Ex. 1, ¶ 5.). Section 5 further states "[Shellpoint] **may** disburse proceeds for the repairs and restoration **in a single payment or in a series of progress payments as the work is completed**." (*Id.*) (Emphasis added.) This is provision is repeated in Section 7. (*Id.*, ¶ 7.) By the use of

the permissive term "may"—as opposed to the mandatory term "shall"—Shellpoint had the express option to elect when to disburse and the number of any disbursements issued pursuant to Section 5. *Walt Rankin & Assocs., Inc. v. City of Murrieta*, 84 Cal.App.4th 605, 614 (2000).

### 3. No Causation.

The Careagas claim they suffered "loss of the use and rental value of the home, additional damage to the home . . . late fees, penalties, and interest on the note . . . as well as having suffered and continuing to suffer, emotional and mental distress." (FAC, ¶¶ 61-62.) Because the Careagas failed to plead the existence or breach of a duty of care, there can be no causation analysis.

### B. Failure to State Breach of Fiduciary Duty.

The Careagas do not establish a fiduciary relationship between themselves and Shellpoint—nor can they. To establish breach of fiduciary duty, the Careagas must demonstrate: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Stanley v. Richmond*, 35 Cal.App.4th 1070, 1086 (1995).

California courts have long held there is no fiduciary duty between a lender and borrower absent special circumstances. *Pour v. Ocwen Mortg. Servicing, Inc.*, No. LACV1704141JAKASX, 2017 WL 10523525, at *6 (C.D. Cal. Nov. 29, 2017) ("Because loan transactions are 'arms length,' absent any special circumstances no fiduciary duties are invoked") (citing *Spencer v. DHI Mort. Co., Ltd.,* 642 F.Supp.2d 1153, 1160–61 (E.D. Cal. 2009)*; Ragland v. U.S. Bank Nat'l Assn.,* 209 Cal.App.4th 182, 206 (2012) (no fiduciary duty between lender and borrower in arms-length transaction); *Perlas v. GMAC Mortg.*, 187 Cal.App.4th 429, 436 (2010) ("there is no fiduciary relationship between the borrower and lender"); *Nymark,* 231 Cal.App.3d at 1093 n.1 ("[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature")). Courts have held the same between a servicer and a borrower. *See Castaneda v. Saxon Mortgage Services, Inc.,* 687 F.Supp.2d 1191, 1198

(E.D. Cal. 2009); *Moreno v. Citibank, N.A.,* No. C09-5339 CW, 2010 WL 1038222, at *3 (N.D. Cal. Mar. 10, 2010); *Williamson v. Sacramento Mortg., Inc.*, 2011 WL 4591098, at *9 (E.D. Cal. Oct. 11, 2011) ("[L]oan servicer owes no fiduciary duty to a borrower when its involvement in the transaction does not exceed the scope of its conventional role as a loan servicer such that it assumed a fiduciary duty").

The same analysis applies with escrow accounts. The Careagas wrongly claim "Shellpoint owed [them] a fiduciary duty in receiving, holding, and disbursing insurance proceeds that were agreed to be used towards remediation and repair." (FAC, ¶ 65.) But California courts have uniformly and long held managing an escrow account is not an exceptional "special circumstance" warranting a fiduciary duty. In *Peterson Dev. Co. v. Torrey Pines Bank,* 233 Cal.App.3d 103 (1991), plaintiff sought a construction loan from defendant Torrey Pines Bank; under the loan agreement between the parties, the bank provided certain escrow services. *Id.* at 109. Plaintiff alleged the bank owed him a fiduciary duty citing its escrow-related conduct. *Id.* at 116. The court rejected this argument, noting it is not uncommon for a lending institution to handle escrow functions and holding the parties' relationship "fell into the usual category of an arm's length, adverse, 'normal commercial banking transaction.'" *Id.* at 119–20. The court in *Rose v. JPMorgan Chase, N.A.*, No. CIV. 2:12-225 WBS, 2012 WL 1574821, at *2–3 (E.D. Cal. May 3, 2012) agreed. There, plaintiff alleged defendant owed her a fiduciary duty regarding escrow items. *Id.* The court disagreed the creation and maintenance of an escrow account established a special circumstance, finding it instead fell within the "conventional role of a lender." *Id.*

Countless California courts agree. *See Hudson v. Wells Fargo Bank, N.A.,* No. C–11–03966 JCS, 2011 WL 5882880, at *8 (N.D. Cal. Nov. 23, 2011) (plaintiff's allegation funds from a rehabilitation loan were placed into a rehabilitation escrow account pursuant to the loan agreement were insufficient to give rise to fiduciary duty); *Palestini v. Homecomings Fin., LLC,* No. 10CV1049–MMA, 2010 WL 3339459, at *5 (S.D. Cal. Aug. 23, 2010) (court dismissed breach of fiduciary duty claim with

prejudice because defendant responsible for an escrow account related to a home loan owed plaintiff no fiduciary duty); *Maloney v. Indymac Mortg. Servs.*, No. CV 13-04781 DDP AGRX, 2014 WL 6453777, at *7 (C.D. Cal. Nov. 17, 2014) ("Force-placing insurance falls within a loan servicer's conventional role. The provision of some escrow services does not fall outside that conventional role, and does not create a fiduciary relationship") (citing *Gustafson v. BAC Home Loans Servicing, LP,* No. SACV 11–915–JST, 2012 WL 7051318 at *7 (C.D. Cal. Dec. 20, 2012)); *Perryman v. Litton Loan Servicing, LP*, No. 14-CV-02261-JST, 2014 WL 4954674, at *17 (N.D. Cal. Oct. 1, 2014) (court rejected plaintiff's argument lender and servicer owed fiduciary duty for managing escrow account).

The Careagas distinguish their escrow account as "[un]traditional" because "Paragraph 5 creates obligations for Shellpoint to apply [escrow] funds [for] . . . restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened." (FAC, ¶ 64.) But this a quintessential escrow function under the trust deed, squarely within Shellpoint's role as servicer. (RJN, Ex. 1, ¶¶ 3, 5, 7.)

Even assuming the Careagas could establish a fiduciary duty, they cannot establish breach or causation. *See supra*, Section IV.A.

### C. Failure to State Breach of Covenant Claim.

The Careagas' fourth cause of action alleges Shellpoint breached the covenant of good faith and fair dealing. (FAC, ¶¶ 75-83.) A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege: (1) a contract; (2) plaintiff did all, or substantially all, of the significant things the contract required; (3) the conditions required for defendant's performance had occurred; (4) defendant unfairly interfered with plaintiff's contract benefits; and (5) resulting harm. *Oasis West Realty LLC v. Goldman*, 51 Cal.App.4th 811, 821 (2011). The Careagas' fall short of these elements: their claim contradicts the trust deed's express terms, they failed to perform under the trust deed, , Shellpoint could not unfairly interfere with insurance

proceeds it had the right to hold, and the Careagas are not entitled to punitive and tort damages.

### 1. The Careagas Contradict the Trust Deed's Express Terms.

The implied covenant cannot override an agreement's express language. *Steiner v. Thexton*, 48 Cal.4th 411, 419–20 (2010). Here, the trust deed expressly permits the very conduct they complain of. (RJN, Ex. 1, ¶¶ 5, 7.) The Careagas claim Shellpoint had an obligation "to act fairly and in good faith with [them] by promptly notifying [them] of the receipt of insurance proceeds . . . and promptly applying those funds for restoration or repair of the Property." (FAC, ¶ 77.) But there is no notice requirement in the trust deed. (*See* RJN, Ex. 1.) And, under Section 5, Shellpoint had the right to hold insurance proceeds until it inspected the property to ensure work was completed to its satisfaction, and from there could determine whether it disbursed in a lump sum or in a series of progress payments. (RJN, Ex. 1, ¶¶ 5, 7.)

### 2. The Careagas Did Not Perform.

To satisfy the second element of their claim, the Careagas must allege they performed under the trust deed. *Goldman*, 51 Cal.App.4th at 821. But the Careagas do not and cannot. They admit they defaulted on the loan by failing to make timely monthly payments, without alleging a viable excuse. (FAC, ¶¶ 38-40; RJN, Ex. 1, ¶ 1 ("Borrower shall pay when due the principal of, and interest on, the debt").)

### 3. Shellpoint Did Not Interfere with the Careagas' Benefits.

The Careagas do not adequately plead Shellpoint interfered with any supposed benefit they were to receive under the trust deed. The idea of the implied covenant is that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Universal Sales Corp. v. Cal. Press Mfg. Co.*, 20 Cal.2d 751, 771 (1942). The explicit "fruit of the contract" here was insurance proceeds. (FAC, ¶¶ 77-79.) Shellpoint held the insurance proceeds pursuant to the trust deed's terms, then disbursed them to the Careagas. (FAC, ¶¶ 23, 29, 31.) The Careagas received exactly what they bargained for under the trust deed.

**4.**     The Careagas Are Not Entitled to Punitive and Tort Damages.

The Careagas allege they are entitled to punitive damages under California Civil Code § 3294 because Shellpoint "acted with oppression, fraud, and malice with the intent to willfully injure, harass, vex, and annoy plaintiff with a conscious disregard for [their] rights." (FAC, ¶ 83.) "In order to plead a valid claim for punitive damages, plaintiff is required to allege facts giving rise to fraud, oppression or malice." *Campbell v. Allstate Ins. Co.*, No. CV-95-1171-WDK, 1995 WL 376296, at *4 (C.D. Cal. May 17, 1995). "Conclusory characterization[s] of [a] defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of oppression, fraud or malice . . . within the meaning of section 3294." *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872 (1977). "Instead, it must be shown by clear and convincing evidence . . . the [defendant] acted maliciously, oppressively or fraudulently." *Campbell*, 1995 WL 376296, at *5. The Careagas allege nothing but conclusory allegations to suggest Shellpoint's actions rise to fraud, oppression, or malice.

The Careagas also allege they have suffered "emotional and mental distress." (FAC, ¶ 82.) But they "may only plead contract damages, rather than tort damages." *Albin v. Trustmark Ins. Co.*, No. CV 13-5788 PSG (AGR), 2013 WL 12191722, at *4 (C.D. Cal. Nov. 25, 2013) (quoting *Stoval v. Basin St. Props.*, No. 12-cv-04661-JST, 2013 U.S. Dist. LEXIS 161265, at *21 (N.D. Cal. Nov. 12, 2013 ("Actions for breach of the implied covenant are based on contract principles and are therefore limited to contract damages.").

**5.**     No Fiduciary Duty.

The Careagas' claim also fails because "[n]o cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F. 3d 944, 955 (9th Cir. 2002) (quoting *Mitsui Mfrs. Bank v. Superior Court*, 212 Cal.App.3d 726, 730 (1989)). California courts have

routinely held there is no special relationship between borrower and servicer. *See infra*, Section IV.A.

### D. Failure to State Elder Abuse.

Under the Elder Abuse and Dependent Adult Civil Protection Act, elder financial abuse occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code. § 15610.30(a)(1). Elder financial abuse also occurs when a person or entity assists another in such conduct. *Id*. at § 15610.30(a)(2). "A person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of agreement . . . regardless of whether the property is held directly or by a representative of an elder or dependent adult." *Id*. at 15610.30(c). A person or entity takes property for a wrongful use when it "knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." *Id*. at § 15610.30(b). An "[e]lder means any person residing in this state, 65 years of age or older." *Id*. at 15610.27. The Careagas' fifth cause of action fails because Shellpoint did not deprive them of the insurance proceeds or act with the requisite intent.

#### 1. The Careagas Fail to Allege Shellpoint Deprived them of Insurance proceeds.

The Careagas claim Shellpoint "appropriated, and retained the property of Plaintiffs . . . in the form of the insurance proceeds, to a wrongful use." (FAC, ¶ 87.) But Shellpoint could not appropriate insurance proceeds it had "the right to hold" under the trust deed. (RJN, Ex. 1, ¶ 5.) The Careagas repeatedly complain about the timeliness of Shellpoint's disbursements of the insurance proceeds but Shellpoint had the option to disburse the proceeds "in a single payment or in a series of progress payments as the work is completed." (RJN, Ex. 1, ¶¶ 5, 7.) The Careagas could not have been deprived of the insurance proceeds when they admit Shellpoint disbursed them, and the property was repaired. (FAC, ¶¶ 31, 36.)

**2.** <u>The Careagas Fail to Allege Requisite Intent</u>.

Assuming Shellpoint wrongly deprived the Careagas of insurance proceeds, they nonetheless fail to allege Shellpoint took the proceeds "for a wrongful use or with intent to defraud." *See* Cal. Welf. & Inst. Code § 15610.30(a)(1).  The Careagas allege Shellpoint "knew or should have known that the failure to timely remediate and repair the Property . . . would be harmful to the Property and to Plaintiffs . . . and Shellpoint intended to defraud [them] . . . by triggering a default on the mortgage, which would allow Shellpoint to either acquire the property by way of a deed-in-lieu of foreclosure or through foreclosure."  (FAC, ¶¶ 88-89.)  Shellpoint could not have intended to defraud the Careagas when it acted timely within the parameters of the trust deed.  It had the option to hold the proceeds until work was completed to its satisfaction or to disburse the proceeds in a single payment or multiple progress payments.  (RJN, Ex. 1 ¶¶ 5, 7.)  It elected the latter.

The Careagas also cannot blame Shellpoint for their default.  They admit they defaulted because their tenant stopped paying rent after the debris flow rendered the property uninhabitable.  (FAC, ¶¶ 19, 38, 40.)  The Careagas do not allege the debris flow excused them from their contractual obligations to make timely payments under the trust deed.  They further fail to show "Shellpoint acted with malice, oppression, and/or fraud pursuant . . . and acted willfully and with the intent to cause injury to [them]" beyond mere and inadequate conclusory allegations.  (FAC, ¶ 94.)  *See supra*, Section IV.C.

**E.    Amendment Would Be Futile.**

In the second iteration of their complaint, the Careagas still fail to allege their negligence, breach of fiduciary duty, breach of covenant of good faith and fair dealing, and elder abuse claims.  The law proves they cannot do so.  Any further amendments to their complaint would be futile.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a

district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.")

## V.  CONCLUSION

Shellpoint acted at all times within its express authority under the trust deed. The court should dismiss the Careagas' claims without leave to amend.

Dated:  October 29, 2021            **AKERMAN LLP**


By: */s/ Parisa Jassim*
     Parisa Jassim
     Preston K. Ascherin
Attorneys for Defendant
NEWREZ dba SHELLPOINT MORTGAGE SERVICING

# PROOF OF SERVICE

I am employed in the City and County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 601 West Fifth Street, Suite 300, Los Angeles, California 90071.

On **November 2, 2021**, I served the following document

**DEFENDANT NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the persons below as follows:

| | |
|---|---|
| Phillip D. Dracht, Esq.<br>THE LAW OFFICE OF PHILLIP DRACHT<br>15 West Carrillo Street<br>Santa Barbara, CA 93101<br>Telephone: (805) 979-8802<br>Facsimile: (805) 613-6607<br>Email: pdracht@drachtlaw.com | **Attorney for Plaintiffs**<br>*MARGARET CAREAGA*<br>*RODRICK CAREAGA* |

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

☒ **BY CM/ECF ELECTRONIC FILING:** I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

☐ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **November 2, 2021**, at Los Angeles, California.

| Carmen Chavez | /s/Carmen Chavez |
|---|---|
| (Type or print name) | (Signature) |