**AKERMAN LLP**
PRESTON K. ASCHERIN (SBN 260361)
Email: preston.ascherin@akerman.com
PARISA JASSIM (SBN 273915)
Email: parisa.jassim@akerman.com
601 West Fifth Street, Suite 300
Los Angeles, California 90017
Telephone:   (213) 688-9500
Facsimile:   (213) 627-6342

Attorneys for Defendant
NEWREZ dba SHELLPOINT MORTGAGE SERVICE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET CAREAGA an individual, RODRICK CAREAGA, an individual<br><br>Plaintiffs,<br><br>v.<br><br>NEWREZ dba SHELLPOINT MORTGAGE SERVICING<br><br>Defendant. | Case No.: 2:21-cv-5314 FLA (PVCx)<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DEFENDANT NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING'S REPLY SUPPORTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**Hearing Information:**<br>**Date:   December 3, 2021**<br>**Time:  1:30 p.m.**<br>**Ctrm:  6B**<br><br>Complaint Filed: June 30, 2021<br>FAC Filed:       October 15, 2021<br>Trial:           None Set |

## I. INTRODUCTION

The Careagas' opposition proves dismissal is warranted. For the second time, they attempt to establish a legal duty where none exists, insisting Shellpoint, naming itself as "insured" on its force-placed insurance policy, somehow went beyond its role as loan servicer. But the Careagas fail to assert supporting facts, nor is case law on their side.

The breach of covenant and elder abuse claims fare no better. Though the trust deed is unambiguous, the Careagas assert a nonexistent notice term. They wrongly claim Shellpoint's alleged delay in disbursing insurance proceeds interfered with monthly payments. But Shellpoint undisputedly disbursed insurance proceeds consistent with the trust deed, further precluding punitive or tort damages.

The trust deed required the Careagas maintain insurance on the property, but they failed to comply. Shellpoint force-placed insurance to protect its own economic self-interest, with no obligation to protect the Careagas. And, under those same terms, Shellpoint has broad discretion as to when and how it disburses insurance proceeds. If the Careagas wanted to narrow Shellpoint's discretion, they would have maintained insurance on the property.

## II. ARGUMENT

### A. Shellpoint Owes No Duty of Care to the Careagas.

Despite long-standing and contrary precedent, the Careagas insist Shellpoint owes them a "duty of care in seeking insurance coverage for the repair of the home . . . keeping the Careagas informed as to the receipt of the coverage funds, and . . . in disbursing those funds." (Opp. 7:11-14.) Attempting to distinguish their facts, they claim America's Wholesale Lender is the "Lender" on the trust deed, not Shellpoint. (Opp. 8:13-9:23.) But this ill-fated distinction ignores the fact California precedent extends to servicers, like Shellpoint. *See, e.g., Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109 (1996) (lender or loan servicer owes no duty or obligations to the borrower other than as expressly agreed in the promissory note and trust deed or

imposed by foreclosure statutes); *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 67 (2013) (same). Shellpoint does not "overlook[] provisions of the [t]rust [d]eed [and] relevant law" in arguing it owes no duty to the Careagas. (Opp. 7:22-23.) Rather, the trust deed and relevant law directly support Shellpoint's position.

Regardless of whether the general rule applies, the Careagas falsely claim a special relationship exists, relying on *Jolley v. Chase Home Finance, LLC*, 213 Cal.App.4th 872 (2013). "However, as the Court in *Lueras v. BAC Home Loan Servicing, LP*, 221 Cal.App.4th 49, 65-67 (2013) pointed out, the Court in *Jolley* was ruling on issues related to a construction loan and not a residential home loan, and acknowledged the 'general rule that a financial institution does not owe a duty of care to a borrower when the institution acts within its traditional role as lender of money.'" *Campos v. Green Tree Mortgage Servs.*, No. ED CV 13-2147-JFW (CWx), 2014 WL 12597636, at *2 n.2 (C.D. Cal. Jan. 21, 2014). And "[t]o the extent that [the Careagas rely] on cases imposing a duty of care on lenders in the context of loan modification reviews, (*see* opp. 13:3-14:1), for example, those cases are inapposite since this case does not hinge on any such modification." *Hayward v. Bank of Am., N.A.*, No. 2:16-cv-03047-MCE-DMC, 2020 WL 1673896, at *10 (E.D. Cal. Apr. 6, 2020) (citing *Jolley*).

### B. *Biakanja* Does Not Apply.

The Careagas ask the Court to consider *Biakanja* factors to determine whether Shellpoint owed the duty of care. (Opp. 14:2-16:1.) But these factors contemplate a scenario with no privity of contract or contractual remedy. *Biakanja v. Irving*, 49 Cal.2d 647, 650 (1958) ("The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors . . . ") *Biakanja* involved a negligence action by the sole beneficiary of a will against the notary public who prepared the will which turned out to be ineffective for lack of proper attestation. *Id*. at 648. Without a preexisting contract, the beneficiary had no recourse beyond a negligence claim against the notary. *Id*. at 651.

There is no dispute the Careagas have a potential contractual remedy—they allege breach of contract in their first amended complaint. (FAC, ¶¶ 47-55.) And efforts to liken this case to those involving specialized expertise are unconvincing. (Opp. 16:2-17:24.) Shellpoint is a loan servicer—not a lawyer, accountant, or doctor. (Opp. 16:4-12.) The Careagas cannot insert a tort claim where the central dispute is an alleged breach of contract. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004) (noting the importance of "prevent[ing] the law of contract and the law of tort from dissolving one into the other.").

### C. *Biakanja* Factors Do Not Point to a Special Relationship.

The *Biakanja* factors are: (**1**) the extent to which the transaction was intended to affect the plaintiff; (**2**) the foreseeability of harm to him; (**3**) the degree of certainty that the plaintiff suffered injury; (**4**) the closeness of the connection between the defendant's conduct and the injury suffered; (**5**) the moral blame attached to the defendant's conduct; and (**6**) the policy of preventing future harm. *Biakanja*, 49 Cal.2d at 650. These factors, evaluated in conjunction with the facts, do not support imposing a duty of care.

#### 1. Force-Placed Insurance Exists to Benefit Shellpoint, Not the Careagas.

The first *Biakanja* factor is the extent to which the transaction was intended to affect the plaintiff. *Id.* The Careagas argue "insurance policies and proceeds designated for rehabilitation of the home are intended to affect homeowners such as the Careagas." (Opp. 14:5-7.) But per the trust deed's express terms, Shellpoint obtained force-placed insurance to protect itself and its property interests. (RJN, Ex. 1, ¶ 5 ("If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability.").)

///

///

**2.** <u>No Foreseeability of Harm to the Careagas.</u>

The Careagas claim the "foreseeability of harm . . . is clear" due to Shellpoint's failure to "inform the Careagas of receipt and use of those funds to repair the property." (Opp. 14:16-19.) As stated above, Shellpoint force-placed insurance for its benefit, not the Careagas. The Careagas maintain the contractual obligation to protect themselves against the harm alleged, (RJN, Ex. 1, ¶ 5 ("Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire [and] hazards . . . ")), but failed to keep insurance on the property, even after being notified their insurer was cancelling their policy. (FAC, ¶ 14.) Shellpoint could not have foreseen the harm to them when it acted solely to protect its security interest.

**3.** <u>No Degree of Certainty of Harm to the Careagas.</u>

There is no certainty of harm to the Careagas related to Shellpoint's conduct in disbursing the insurance proceeds. Shellpoint force-placed insurance for its own benefit and, even if it owed some obligation to the Careagas, acted squarely within the trust deed when disbursing the proceeds. (RJN, Ex. 1, ¶ 5.)

**4.** <u>No Close Connection Between Shellpoint's Conduct and Damage.</u>

Shellpoint did not cause property damage. (FAC, ¶¶ 1, 4, 17-19, 37.) And to the extent the Careagas claim Shellpoint's delay further compromised the property, Shellpoint force-placed insurance to protect itself. Any damage caused by Shellpoint's alleged delay harms Shellpoint and its security interest.

**5.** <u>Shellpoint Did Not Place the Careagas in Their Current Position and Carries No Moral Blame.</u>

The Careagas knew Safeco cancelled their insurance policy effective April 17, 2017, but failed to renew or procure coverage. (FAC, ¶ 14.) Shellpoint—pursuant to trust deed's express terms—force-placed insurance to protect its own security interest, with no obligation to protect the Careagas. Nonetheless, the insurance proceeds from the force-placed policy repaired the home and restored it to habitable conditions. (FAC, ¶ 36.)

**6.     Policy of Preventing Future Harm Imposes No Duty**.

"[A] strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure the success of every investment." *Nymark,* 231 Cal.App.3d 1089, 1099-1100 (1991) (internal quotations omitted). And Shellpoint need only act within its own economic self-interest pursuant to the trust deed's express terms. (RJN, Ex. 1, ¶ 5.)

**D.     Failure to State Breach of Fiduciary Duty.**

The Careagas conclusorily argue the facts "present[] 'special circumstances where the Court can find a fiduciary duty between the lender and a borrower.'". (Opp. 19:23-25.) Again, they incorrectly claim significance regarding Shellpoint's status as servicer as opposed to "Lender," (opp. 19:25-27), falsely claiming "all of the cases cited by Shellpoint for the proposition that a lender does not owe a borrower a fiduciary duty are standard lender-borrower relationships." (Opp. 20:6-7.) The Careagas overlook the many cited cases extending the general rule to servicers. (*See* doc. 26 at 9-10.) And the Careagas' own authority, *Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal.App.3d 103 (1991), is consistent. Shellpoint force-placing insurance and disbursing insurance proceeds to repair the property is squarely within Shellpoint's rights under the trust deed. (RJN, Ex. 1, ¶ 5.)

**E.     Failure to State Breach of Covenant Claim.**

**1.     The Careagas Contradict the Trust Deed's Express Terms.**

The implied covenant cannot override an agreement's express language. *Steiner v. Thexton*, 48 Cal.4th 411, 419–20 (2010). Here, the trust deed expressly permits the very conduct the Careagas complain of. (RJN, Ex. 1, ¶¶ 5, 7.) The Careagas claim Shellpoint had an obligation "to act fairly and in good faith with [them] by promptly notifying [them] of the receipt of insurance proceeds . . . and promptly applying those funds for restoration or repair of the Property." (FAC, ¶ 77.) But there is no notice requirement in the trust deed. (*See* RJN, Ex. 1.) And, under Section 5, Shellpoint had the right to hold insurance proceeds until it inspected the property to

ensure work was completed to its satisfaction, and from there could determine whether it disbursed in a lump sum or in a series of progress payments.  (RJN, Ex. 1, ¶¶ 5, 7.)

The Careagas attempt to revive their breach of covenant claim by creating an ambiguity in the trust deed regarding the notice requirement, arguing "but the Deed of Trust does not say 'there is no notice requirement.'" (Opp. 23:26-24:16).  "A provision in a contract that is susceptible to multiple interpretations may properly be considered 'ambiguous,' but silence does not constitute ambiguity."  *Grail Semiconductor v. Renesas Elecs. Am. Inc.*, No. C 11-03847 JCS, 2012 WL 12920690, at *8 (N.D. Cal. Sept. 18, 2012).  The Careagas cannot now impose additional notice obligations.  And, in their own words, the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  (Opp. 24:8-10.)

**2.**     The Careagas Did Not Perform.

The Careagas argue they do not have to pay their loan because of Shellpoint's "dilatory conduct."  (Opp. 25:12-15.)  Of course, they have no supportive authority.  The Careagas do not dispute defaulting on the loan, and there is no basis for them to shirk agreed upon obligations.  (FAC, ¶¶ 38-40; RJN, Ex. 1, ¶ 1 ("Borrower shall pay when due the principal of, and interest on, the debt").)

**3.**     Shellpoint Did Not Interfere with the Careagas' Benefits.

The Careagas admit "the benefit was that the insurance proceeds were to be used to repair the home."  (Opp. 25:21-22.)  Shellpoint disbursed the proceeds and the property was repaired.  (FAC, ¶¶ 23, 29, 31.)  The Careagas received exactly what they bargained for under the trust deed.

**4.**     The Careagas Are Not Entitled to Punitive and Tort Damages.

The Careagas argue "there is a general rule precluding tort recovery for noninsurance contract breach, at least in the absence of an independent duty arising from principles of tort law."  (Opp. 25:24-26.)  As stated above, Shellpoint does not owe the Careagas any duty of care.

As to punitive damages, the Careagas seemingly admit they cannot allege facts showing Shellpoint "acted with oppression, fraud, and malice with the intent to willfully injure, harass, vex, and annoy plaintiffs with a conscious disregard for [their] rights." (Opp. 26:2-4.)  Asking "but how else can you characterize what Shellpoint did here?" is hardly sufficient. (Opp. 26:4.) *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872 (1977) ("[c]onclusory characterization[s] of [a] defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of oppression, fraud or malice . . . within the meaning of section 3294.")

### F. Failure to State Elder Abuse.

The Careagas bizarrely claim the insurance proceeds were not used to restore or repair the property. (Opp. 27:5-7 ("The Trust Deed requires that the insurance proceeds, unless otherwise agreed in writing, be used to restore or repair the Property if it is economically feasible and Lender's security is not lessened.  That didn't happen.").) But this contradicts the first amended complaint. (*See* FAC, ¶¶ 31 ("Shellpoint indicated they would agree begin working on releasing 25% of the check for $171,991.64"); 36 ("the repairs commenced on April 2019 and the property was deemed habitable by September 2019.").)  Shellpoint could not have taken insurance proceeds for a wrongful use or with intent to defraud when it released the proceeds consistent with the trust deed.

Not only do the Careagas fail to support allegations Shellpoint "took, secreted, appropriated, and retained" the insurance proceeds, (FAC, ¶ 87), they also fail to allege Shellpoint acted with the requisite intent.  Instead, the Careagas quote John Locke— unpersuasive and nonmandatory authority—for the proposition Shellpoint's actions "are the best interpreters of [its] thoughts." (Opp. 27:11-12.)

/ / /

/ / /

/ / /

/ / /

/ / /

## III. CONCLUSION

Shellpoint acted at all times within its express authority under the trust deed. Having had two chances to plead their claims, the court should grant dismissal with prejudice.

Dated: November 23, 2021  **AKERMAN LLP**

By: */s/ Parisa Jassim*
    Parisa Jassim
    Preston K. Ascherin
Attorneys for Defendant
NEWREZ dba SHELLPOINT MORTGAGE SERVICING

8     Case No. 21-cv-5314 FLA (PVCx)
**REPLY SUPPORTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# PROOF OF SERVICE

I am employed in the City and County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 601 West Fifth Street, Suite 300, Los Angeles, California 90071.

On **November 30, 2021**, I served the following document

**DEFENDANT NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING'S REPLY SUPPORTING MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

on the persons below as follows:

| | |
|---|---|
| Phillip D. Dracht, Esq.<br>THE LAW OFFICE OF PHILLIP DRACHT<br>15 West Carrillo Street<br>Santa Barbara, CA 93101<br>Telephone: (805) 979-8802<br>Facsimile: (805) 613-6607<br>Email: pdracht@drachtlaw.com | **Attorney for Plaintiffs**<br>*MARGARET CAREAGA*<br>*RODRICK CAREAGA* |

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

☒ **BY CM/ECF ELECTRONIC FILING:** I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se.

☒ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **November 30, 2021,** at Los Angeles, California.

Suzanne I. Jimenez     *Suzanne I. Jimenez*
(Type or print name)     (Signature)